IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALD JONES, #B13486, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 23-cv-02889-SMY |
| | ) |
| ROB JEFFREYS, | ) |
| ANTHONY WILLS, | ) |
| WEXFORD HEALTH RESOURCE, | ) |
| INC., and JANE DOES 1-7, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Gerald Jones, an inmate of the Illinois Department of Corrections currently incarcerated at Menard Correctional Center, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 (Doc. 1). Jones claims he was wrongfully transferred to Menard, where he was subjected to unsafe and unconstitutional conditions of confinement. He seeks monetary, declaratory, and injunctive relief including mental health treatment and/or a prison transfer.[1]

The case is now before the Court for review under 28 U.S.C. § 1915A. Any portion of the Complaint that is frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

---

[1] Jones does not seek a temporary restraining order (TRO) or a preliminary injunction, and he does not cite Rule 65 of the Federal Rules of Civil Procedure governing both types of interim relief. Therefore, his request is construed as one for permanent injunctive relief *at the close of the case*. Because he allegedly faces imminent danger of serious physical injury sufficient to overcome the three-strikes bar to litigation under 28 U.S.C. § 1915(g), the Court will screen the Complaint and Motion for Leave to Proceed *in forma pauperis* immediately. *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012). Should Jones wish to pursue interim relief, he may file a separate motion for TRO and/or preliminary injunction under Rule 65(a) or (b) at any time during the pending action.

## The Complaint

Jones makes the following allegations in the Complaint (Doc. 1): Jones was transferred from Lawrence Correctional Center to Menard Correctional Center on July 29, 2023, after he was disciplined for an alleged staff assault at Lawrence. *Id*. at ¶ 1. Menard's warden (Warden Anthony Wills) and several non-parties were responsible for the transfer. *Id*. at ¶¶ 2-6.

Jones suffers from serious mental illness, including depression, anxiety, and a history of self-harm. *Id*. at ¶¶ 43-48. The presence of conditions that exacerbate his mental illness and denial of mental health treatment make placement at Menard inappropriate. *Id*. at ¶¶ 49-59.

Only eighteen minutes are he arrived, Jones was assaulted by four officers who are not parties to this action. *Id*. at ¶ 8. They beat, punched, and kicked him while he was cuffed at the wrists and ankles, all in retaliation for his alleged staff assault at Lawrence. *Id*. at ¶¶ 8, 31. The officers placed him in a cell with no running water, working toilet, or breakfast the following morning. *Id*. at ¶¶ 9-11. They ignored his pleas for medical attention and mental health treatment. *Id*. Jones maintains that they are all racists. *Id*.

Following the assault, Jones suffered an emotional breakdown and began cutting his arm. *Id*. at ¶ 12. An officer discovered him inflicting self-harm and sprayed him in the face with mace. *Id*. at ¶ 13. He was then taken to an outside hospital for treatment of significant blood loss and required 23 stitches for his wounds. *Id*. at ¶ 14. When he returned to Menard, Jones' "flapped dead skin" was stitched back onto his arm in a manner that caused him to develop gangrene four days later. He now has a "hole" in his arm. *Id*. Wexford, Warden Wills, and John Doe (a non-party physician) are responsible for the infections developing and refused to treat any of his medical conditions because they did not want to acknowledge his assault. *Id*. at ¶ 16 and 17.

Although Jane Doe (mental health staff) placed Jones under "constant watch status" when he returned from the hospital, Jones received no mental health treatment. *Id*. at ¶¶ 15-18. Jane Does 1-7 (mental health staff) denied him mental health care on July 30, 2023, July 31, 2023, August 1, 2023, August 2, 2023, August 5, 2023, and August 15, 2023. When Jones requested crisis intervention, they simply walked away.[2] He describes all seven as racists. *Id*.

Jones complains about other conduct of non-parties that occurred between July 29, 2023 and August 21, 2023, as follows: (a) shift officers, including Officer Maldonado, routinely turned off the water to his sink and toilet during the 7-3 and 3-11 shifts (*id*. at ¶ 19); numerous officers denied Jones breakfast (*id*. at ¶¶ 9, 20); all officers denied Jones hygiene supplies (*id*. at ¶ 21); all officers denied Jones a proper mattress (*id*. at ¶ 22); all officers denied Jones laundry services, clean clothing, and clean sheets (*id*. at ¶ 23); all officers and Counselor Quick (a non-party) denied Jones copies of various forms beginning August 4, 2023[3] (*id*. at ¶ 24); and Officers Bent, Garcia, and Jullen (all non-parties) used various intimidation tactics against Jones[4] (*id*. at ¶¶ 32-33).

IDOC Director Jeffreys, Warden Wills, and John Does (all non-parties) implemented an "assault policy" at Menard, whereby all inmates transferred into the prison due to a past staff assault are: (a) assaulted by staff upon their arrival; (b) deprived of necessary medical care, food, clothing, and hygiene supplies; and (c) subjected to a "code of silence" when they attempt to request basic necessities following their assault. *Id*. at ¶¶ 29-31.

---

[2] He describes two instances occurring on August 5 and 15, 2023, when two Jane Does (mental health staff) came to his cell to check on him. When Jones described the staff assault and his resulting mental distress, they walked off without offering mental health treatment. (*Id*. at ¶¶ 25-26). Every mental health provider responded to his requests the same way. (*Id*. at ¶ 27).
[3] This includes grievance forms, phone list forms, visiting list forms, and money voucher forms. *Id*.
[4] These officers engaged in intimidation tactics, like banging on the windows, threatening future assault or murder, and denying meals, ice, and showers. *Id*.

**Discussion**

The Court designates the following claims in the Complaint:

**Count 1:** Fourteenth Amendment claim against Warden Wills and other non-parties for the wrongful transfer of Jones to Menard on July 29, 2023.

**Count 2:** Eighth Amendment claim against four officers, who are all non-parties, for assaulting Jones when he arrived at Menard on July 29, 2023, and denying him a cell with a working toilet, working sink, and breakfast the next day.

**Count 3:** Eighth Amendment claim against an unknown officer, who is a non-party, for responding to Jones's suicide attempt by spraying him in the face with mace on July 29, 2023.

**Count 4:** Eighth Amendment claim against Wexford, Warden Wills, and John Doe (a non-party physician) for causing Jones to develop a serious infection four days after a "skin flap" on his arm was improperly sutured at Menard on or around July 29, 2023.

**Count 5:** Eighth Amendment claim against Defendants for their deliberate indifference to Jones's serious mental illness and related mental health needs from July 29, 2023 through August 21, 2023.

**Count 6:** Eighth and/or Fourteenth Amendment claims against non-parties for miscellaneous deprivations that occurred between July 29, 2023 and August 21, 2023, including the denial of running water, meals, hygiene supplies, proper mattress, laundry services, clean clothing, clean sheets, and various forms and use of intimidation tactics.

**Count 7:** Eighth Amendment claim against IDOC Director Jeffreys, Warden Wills, and John Does (all non-parties) for implementing an "assault policy" against inmates transferred to Menard following discipline for a staff assault at another prison, whereby prisoners are assaulted by staff, denied basic necessities, and subjected to a "code of silence."

**Count 8:** Fourteenth Amendment equal protection claim against Defendant for discriminating against Jones based on his race.

**Count 9:** Illinois state law claim against Defendants for their intentional infliction of emotional distress on Jones from July 29, 2023 through August 21, 2023.

**Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under** *Twombly*.[5]

### Counts 1 and 4

Jones asserts a claim against Warden Wills in Count 1 for his wrongful transfer to Menard and a claim against Wexford and Warden Wills in Count 4 for an infection he developed following a medical procedure on his arm.[6] He named these defendants based on their supervisory roles over prison staff and medical staff, but does not explain how either was involved in the alleged constitutional deprivation. However, because the doctrine of *respondeat superior* does not apply in § 1983 actions, Warden Wills and Wexford cannot be held liable for the actions of any subordinates or employees. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); see also, *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). In other words, liability does not "attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). As no other defendants are named in connection with these claims, Counts 1 and 4 will be dismissed without prejudice for failure to state a claim for relief.

### Counts 2, 3, and 6

Jones asserts the claims in Counts 2, 3, and 6 against non-parties, including John Does (various officers, including the four involved in his assault), John Doe (physician), Officer Maldonado, Counselor Quick, Officer Bent, Officer Garcia, Officer Jullen, and others. When parties are not listed in the case caption or list of defendants, the Court will not treat them as

---

[5] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

[6] All other individuals named in connection with Counts 1 and 4 are non-parties; the claims against them will be considered dismissed. FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

defendants.  *See* FED. R. CIV. P. 10(a); *Myles*, 416 F.3d at 551-52 (a defendant must be "specif[ied] in the caption").  Therefore, these claims and non-parties will be dismissed without prejudice.

## Count 5

Count 5 arises from allegations that Jane Does 1-7 (mental health staff) failed to provide Jones with mental health treatment following his transfer, assault, and suicide attempt on July 29, 2023.  Specifically, he alleges that these mental health staff members walked away each time he requested crisis intervention or counseling from them.  To state a viable Eighth Amendment claim, Jones must plead facts sufficient to suggest that he suffered from an objectively sufficiently serious medical or mental condition that was met with "deliberate indifference to his health or safety" by these defendants.  *Kupsky v. McLaren*, 748 F. App'x 74, 76 (7th Cir. 2019).  The objective component of this claim is satisfied at screening by Jones' allegations regarding his mental health diagnoses, suicide attempt, and ongoing exposure to conditions posing a serious risk of harm to his health and safety from July 29, 2023 to August 21, 2023.  The allegations also suggest deliberate indifference – that Jane Does 1-7 were aware that Jones requested and needed mental health treatment but knowingly or intentionally disregarded his treatment needs.  Therefore, Count 5 will proceed against Jane Does 1-7.

## Count 7

Jones asserts a claim against IDOC Director Jeffreys, Warden Wills, and John Does (all non-parties) for implementing an "assault policy" at Menard.  This claim is related to the alleged staff assault by four unknown officers mentioned in Count 2 and denial of basic needs mentioned in Count 6.

Claims brought against individuals in their official capacities are treated as a claim against the governmental entity itself.  A governmental unit is not liable under § 1983 unless a

constitutional deprivation is caused by its own policy or custom. *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658 (1978). An unconstitutional policy or custom can be shown in three ways: (1) an express policy causing the deprivation when enforced; (2) a widespread practice amounting to a "custom or usage" causing the loss; or (3) a person with final policymaking authority causing the deprivation. *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). Jones does not invoke any of these three theories or develop this claim. Instead, he relies on conclusory assertions of an "assault policy" arising from his assault by four unknown officers (Count 2), his subsequent mistreatment by non-parties (Count 6), and a "code of silence" these non-parties allegedly used. As such, the underlying claims against non-parties do not survive screening and Count 7 will likewise be dismissed for failure to state a claim upon which relief may be granted.

**Count 8**

To pursue a claim for discrimination under the equal protection clause, a plaintiff must show that he "is a member of a protected class," that he "is otherwise similarly situated to members of the unprotected class," and that he "was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (citations omitted). While Jones characterizes the defendants as "racists" throughout the Complaint, an assertion of racism, without more, is insufficient to articulate a plausible claim under the Fourteenth Amendment Equal Protection Clause. Therefore, Count 8 will be dismissed without prejudice.

**Count 9**

The Complaint allegations suggest that Jane Does 1-7 (mental health staff) intentionally engaged in conduct intended to cause severe emotional distress, and did in fact cause severe distress, when they responded to Jones' repeated requests for crisis intervention and mental health

7

treatment after his assault and suicide attempt by walking away. *See McGreal v. Village Orland Park*, 850 F.3d 308 (7th Cir. 2017) (articulating elements of claim). As such, the Court will exercise supplemental jurisdiction over the Illinois state law claim for intentional infliction of emotional distress, and Count 9 will proceed in conjunction with Count 5 against Jane Doe 1-7. *See* 28 U.S.C. § 1367(a).

### Identification of Jane Doe 1-7

Jones may proceed with claims against Jane Does 1-7 (unknown members of Menard's mental health staff) after identifying each defendant by name and will have the opportunity to engage in limited discovery to ascertain their identities. Warden Wills (official capacity) shall remain named in the case in his official capacity for purposes of responding to discovery aimed at identifying the unknown defendants. Once the names of these unknown defendants are discovered, Jones must file a motion to substitute the newly identified defendants in place of the generic designations in the caption and throughout the Complaint.

### Pending Motions

#### *IFP Motion (Doc. 2)*

Jones filed an application for leave to proceed *in forma pauperis* without prepayment of the $400.00 filing fee for this action (IFP motion) (Doc. 2). A prisoner is prohibited from bringing a civil action IFP if the prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Jones admits that he "struck out" before filing this action, but his allegations regarding the conditions of his confinement suggest that he faces imminent danger of serious physical harm sufficient to overcome the three-strikes bar to litigation. *See Jones v.*

*Sternes*, 124 F. App'x 448, at *2 (2005).  Accordingly, the IFP motion is **GRANTED**.  The Court will enter a separate order assessing the initial partial filing fee.

### *Motion for Recruitment of Counsel (Doc. 3)*

An indigent plaintiff seeking representation by court-recruited counsel must demonstrate: (a) reasonable efforts to locate counsel on his own; and (b) an inability to litigate the matter without representation.  *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (articulating factors court considers when evaluating motions for counsel).  Jones has not demonstrated any efforts to find counsel to represent him in this case.  Although he blames prison officials for denying his request for a money voucher to pay for postage and denying him access to paper and a pen, he discloses no attempts to secure counsel using other methods (i.e., email communication, phone calls).  Moreover, the Court finds that Jones is capable of proceeding unrepresented for now.  He prepared and filed a coherent Complaint that survives initial review, and his pleadings are well written, comprehensive, and clear.

There is nothing more for Jones to do at this time.  The Court will order service of this lawsuit on Warden Wills, in his official capacity.  Once the warden appears, the Court will enter a limited discovery order containing deadlines and instructions for identifying the seven unknown defendants.  When they are identified by name, the defendants will be served with this lawsuit.  Should Jones require assistance in this identification process, he may renew his request for counsel by filing a new motion, after first attempting to secure counsel on his own.  Along with any renewed motion, Jones should submit a copy of his communications to or from attorneys or law firms seeking representation.  A list of *at least* three attorneys and law firms contacted, dates of each contact, and summary of responses is sufficient to show reasonable efforts to find counsel.

**Disposition**

The Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A. **COUNTS 5** and **9** will proceed against **JANE DOE 1-7 (Menard's Mental Health Staff)** in their individual capacities. **ANTHONY WILLS (Warden of Menard Correctional Center)** remains named as a defendant, in his official capacity, for two purposes: (a) identifying the unknown defendants; and (b) implementing any injunctive relief ordered herein.

**COUNTS 1, 2, 3, 4, 6, 7,** and **8** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants **ROBERT JEFFREYS** and **WEXFORD HEALTH RESOURCES, INC.** are also dismissed on the same ground.

**The Clerk's Office is DIRECTED to TERMINATE Defendants ROBERT JEFFREYS and WEXFORD HEALTH RESOURCES, INC. as parties in CM/ECF and ENTER the Court's standard HIPAA Qualified Protective Order.**

The Clerk of Court shall prepare for Defendants **WARDEN ANTHONY WILLS (official capacity only)** and **JANE DOE 1 THROUGH 7 (individual capacities, once identified)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If any defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants Jane Doe 1-7, once identified, need only respond to the issues stated in this Merit Review Order**. **Warden Wills need only file an appearance.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* is granted. 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  September 20, 2023

> s/ Staci M. Yandle
> **STACI M. YANDLE**
> **United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint, after you have identified them by name. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. You are advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **You do need not submit any evidence to the Court at this time, unless specifically directed to do so.**